PERRY B. LINCOLN v. THE TERRITORY OF OKLAHOMA.

(Filed Aug. 24, 1899.)

CRIMINAL LAW—*Change of Judge.—Affidavit.* Under the Statutes of Oklahoma 1893, sec. 5138, as amended by Laws 1895, p. 198, where the accused makes affidavit in which it is positively stated that he cannot have a fair and impartial trial, on account of the bias and prejudice of the presiding judge of the court where the indictment or information is pending, and presents it in proper time to the court, it is sufficient. The affidavit need 'not set up the facts on which it is based, or reasons for the belief of the affiant as to the bias or prejudice of the judge. (*Cox v. U. S.* 50 Pac. 175, 5 Okla. 701, overruled.)

(Syllabus by the Court.)

*Error from the District Court of Garfield County; before John L. McAtee, District Judge.*

.W. H. Robb and John H. Curran, for plaintiff in error.

*Harper S. Cunningham, Attorney General,* for defendant in error.

Information against Perry B. Lincoln for selling unwholesome food. Verdict of guilty, and defendant brings error. Reversed.

### STATEMENT OF THE CASE.

On the 25th day of February, 1898, the county attorney filed an information against the plaintiff in error, in the district court of Garfield county, the charging part of which is as follows: "That on the 24th day of February, 1898, in said county of Garfield and Territory of Oklahoma, one Perry B. Lincoln did then and there, unlawfully and wilfully, sell for food, to divers buyers, whose names are to the county attorney unknown, certain diseased, corrupted, and unwholesome provisions, the same being diseased, corrupted, and unwholesome meat, to-wit, a part of a diseased, corrupted, and unwholesome beef, without first making the fact fully known to the said buyers that said meat was diseased, corrupted, or unwholesome, contrary," etc. Defendant was arrested the same day, and on March 3, the defendant filed a motion for a continuance. On March 6 the same was overruled, and exception taken. On March 8 defendant filed an application for a change of judge, which application was supported by affidavit, and was in words and figures as follows:

"Territory of Oklahoma, Garfield County,—ss.

"I, Perry B. Lincoln, on oath, do solemnly swear that I am the defendant and accused person in this case above entitled, and that I cannot have a fair and impartial trial of this cause before the Hon. Jno. L. McAtee, the

presiding judge of this court, by reason of the bias and prejudice of the said Jno. L. McAtee, presiding judge of said court.

"PERRY B. LINCOLN.

"Subscribed and sworn to before me this 8th day of March, 1898.

"J. C. McCLELLAND, Clerk.
"By M. A. Alexander, Deputy."

Which motion and affidavit were overruled by the court, which action of the court was excepted to by the defendant. On March 10 the case was tried and submitted to the jury. March 11 a verdict was returned, finding the defendant guilty. March 12 motion for a new trial was filed and overruled, and sentence passed upon the defendant to pay a fine of $100, and to be confined in the county jail six months, to which finding and judgment of the court the defendant excepted, now excepts, and brings this case here for review.

Opinion of the court by

IRWIN, J.: Several assignments of error are urged by the plaintiff in error for the reversal of this case, but we think it necessary only to consider one, to-wit, the error assigned that the court overruled the affidavit for a change of judge. The decision of this point involves the construction to be put upon the Statutes of Oklahoma, sec. 5138, as amended by Laws, 1895, p. 198, which reads as follows: "If it be shown to the court by the affidavit of the accused that he cannot have a fair and impartial trial by reason of the bias and prejudice of the presiding judge, or that the judge has been of counsel in said cause, or is of kin to either party to the action, or is interested, a change of judge shall be

ordered, and the clerk of the district court shall imme-
diately transmit to the supreme court of the Territory
a certified copy of the order."

In this connection should be considered the act of
congress approved December 21, 1893, wherein it is pro-
vided as follows: "The supreme court of said Territory,
[referring to Oklahoma] or the chief justice thereof,
may designate any judge to try a particular cause in
any district when the judge of said district has been of
counsel, or is of kin to either party to the action, or is
interested, or is biased or prejudiced in the case, or if for
any other reason said judge is unable to hold the court."

The only question in this case is, had the trial judge
any discretion to refuse the application of the defendant
for a change of judge to try said cause, and is the statute
above quoted mandatory requiring the judge to grant the
change asked for upon the filing of the affidavit? It is
contended by counsel for the plaintiff in error that the
statute is mandatory, and leaves no discretion in the
judge to whom the application is presented to refuse the
same.

We approach the decision of the question involved in
this case with a great deal of diffidence and considerable
embarrassment, from the fact that this identical ques-
tion has been heretofore presented to this court, and a
decision rendered which is at variance with the opinion
of this court as at present constituted; and while we have
the greatest respect for the learning and ability of the
distinguished gentlemen who at that time composed this
court, and while we realize that, so far as possible, there
should be uniformity in the decisions of this court, and
that when a matter has once been finally determined it
should be conclusive, and should establish the law upon

the subject, still we feel it is the duty of the court to carefully, candidly, and impartially consider each and every question presented, and bring to bear on every case the best judgment of the court, without regard to previous decisions and unhampered by precedent, and even the desire for uniformity should not be purchased at so costly a price as the surrender of honest judicial opinions, or on account of deference for previous decisions. We would only consent to overrule a prior decision of this court, upon any question, upon being absolutely convinced that the former decision was erroneous.

It seems to us that the solution of this question depends largely, if not entirely, upon the meaning to be given to the word "shown," as used in the affidavit. We think the affidavit shows just what it states in clear and unmistakable terms, and what it shows does not depend upon the verity of it, nor does it depend upon the degree of certainty or conviction it carries with it. In this connection, we think, the words "show" and "represent" are synonomous terms; that to show to the court means to represent to the court the facts as therein stated. It is a well-known principle of evidence that where a thing which is reasonable in itself is asserted on the one side, and not denied on the other, it must be accepted as a fact.

Now, in this case, under the section of the statutes in question, the only evidence of the facts stated in said affidavit is the affidavit itself; as no one would contend, it seems to us, that in such a case counter-affidavits could be filed or other evidence heard. Then, when the affidavit is presented to the court, it stands uncontradicted, and the only means by which the court could dispute it would be to use his

personal knowledge. This would practically make him a judge in his own case, as the allegation in the affidavit is that he, the presiding judge, is biased and prejudiced against the accused. The charge is made against him personally of bias and prejudice. Now, would it be reasonable to say the identical person against whom such a charge was made would be a competent tribunal to try and decide that question? To allow a man to judge of matters in which he is personally interested is not only contrary to the true principles of all law, but is repugnant to our ideas of justice. And, it seems to us, to submit such a charge for decision to the judge against whom such prejudice was charged, would be to defeat the change of judge in every case where such prejudice actually existed; for, in the language of Judge Brewer, "all experience teaches that, usually, he who is prejudiced against another is unconscious of it, or unwilling to admit it."

That brings us to the question, did the legislature, in enacting this statute, intend that the power should be given to the presiding judge to overrule an affidavit, filed in apt time, positive in its terms, standing alone and uncontradicted, merely upon the private personal knowledge of the court, which could by no possible means be made a part of the record in the case, and, being evidence, to the admission of which the counsel could by no possible foresight on his part save an exception? The opposite position, it seems to us, is not only consonant with the principles of law, sound reason, equity, and justice, but is fully sustained by the holdings of the various courts that have had occasion to pass upon it.

In the case of *State v. Kent*, (N. D.) 62 N. W. 631, this question is considered, and the language of the statute of that state is: "And if the accused shall make an affidavit that he cannot have an impartial trial by reason of the bias and prejudice of the presiding judge of the district court where the indictment is pending, the judge of said court may call in another judge of a district court to preside at said trial." The only difference in this and our statute is in the use of the word "shown," as it will be noticed where our statute reads, "If it is shown by the affidavit of the accused," in Dakota it says, "if the accused shall make an affidavit that he cannot have an impartial trial." In this case cited, the North Dakota supreme court says: "It cannot admit of a doubt that the act we are interpreting was passed to give the prisoner the right to insist upon a trial before a different judge, when the judge of the district in which the indictment is pending is biased. From this proposition flows the corollary that, upon the presentation of the affidavit stating such bias and prejudice, the right of the accused to have another judge called in to try the cause is absolute; if not, then the judge attacked for prejudice sits in judgment on the question of his own bias. It is true that no property rights of his own were involved, neither is his life or his liberty at stake. But the mind that cannot decide that it is biased, without at the same time admitting by such decision that it was willing, in that condition, to enter on the trial of the man against whom the prejudice is entertained, without disclosing such prejudice and bias, and that it would have carried on such trial to its close, conscious that it was not impartial—a man placed in a position where a de-

cision against his own freedom from bias will bring such humiliation—is not that calm, disinterested mind, with respect to that question, which the law requires and the honest administration of justice demands. This consideration renders it impossible for us to impute to the legislature the purpose to permit the judge so assailed to pass on his own bias. The language of the statute confirms our view that he is not to try this question."

We think that this reasoning applies as well and as forcibly to our own statute as to that of North Dakota. We are aware that this court, in rendering the decision in the Cox Case, 5 Okla. 701, 50 Pac. 175, held that it did not apply to the statute under consideration, because in the North Dakota statute it was provided that, "if the accused shall make affidavit," and in our statute it reads, "if it shall be shown to the court by the affidavit of the accused." But we think the distinction so drawn is too fine for the average intelligence, and is a distinction without a difference. In both cases the kind, character, and degree of proof is defined, to-wit, by the affidavit of the accused. But this court in the Cox Case says: "It was not the fact of the bias and prejudice, but the fact of the making the affidavit, that determined the right to a change in that state." But we insist that the language of the statute there is no more imperative in its terms than is the statute here. Is it not as strong to say, "if the accused shall show by affidavit," as to say, "if the accused shall make an affidavit" of, certain facts? And, by a fair construction of the language, are they not one and the same thing? We think the word "show," when used in this connection

in our statute, simply means "represent;" and that the intention of the legislature was, when the accused shall present to the court an affidavit which represents "that he cannot have a fair and impartial trial by reason of the bias and prejudice of the presiding judge," the change of judge should follow. This affidavit is substantially in the language of the Statute of 1893, and in the case of *State v. Palmer*, (S. D.) 57 N. W. 491, the court says: "While it is always the safer and better practice to follow the language of the statute, courts are inclined to hold affidavits substantially in the language of the statute, or in which language equivalent to the language of the statute is used, sufficient."

We think it fair to presume that the statute in question was passed by the legislature in a calm, deliberate frame of mind, and with a full knowledge of its terms, and a complete understanding of its meaning and intent, and that the legislature intended all that the language therein contained expresses, and that it intended no more or nothing different. Now, this act provides for a change of judge, or the removal from the county or court, in four different cases, to-wit:

"First. If the offense charged in the indictment be punishable with death or imprisonment in the territorial prison for life, if it be made to appear by the affidavit of the accused, and two disinterested persons, that a fair and impartial trial cannot be had in such county, a change must be granted.

"Second. If the offense charged in the indictment be punishable with confinement for a term less than life, in the territorial prison, and it be shown to the court by the affidavit of the accused, corroborated by five disinterested persons, that a fair and impartial trial cannot be

had in the county, the court may, in its discretion, award or refuse the change; the order shall be reviewable upon appeal.

"Third. In other cases a change from a county shall be allowed only when it is clearly shown by the affidavits of not less than ten disinterested persons that an unprejudiced jury cannot be obtained in the county to try the cause.

"Fourth. If it be shown to the court by the affidavit of the accused that he cannot have a fair and impartial trial by reason of the bias and prejudice of the presiding judge * * a change of judge shall be ordered." * *

It will be noticed that in the first section of the act there is no question presented to the court for decision, or no discretion in the judge permitted. The language admits of no doubt as to its imperative character. The reason for this is, no doubt, on account of the gravity of the offense and the severity of the punishment. In the second section, by express terms, it is made discretionary with the court. In the third a question is presented in which there could be no impropriety in the court deciding. It is a question in which he is alleged to have no personal interest, no bias, and no feeling. It is a question between the accused and the people. But in the fourth is presented a question of vital moment to the court. It affects himself, and the decision of which would make him the judge of his own case; and is it not fair to presume that when the legislature, by express terms, made it a matter of discretion in one instance, and entirely omitted it from the other, such omission was just as much a part of the legislative intent as the inclusion? And, by the well-known rule that the inclusion of the one is the exclusion of the

other, may we not suppose that the legislature intended, when it put in the second section of the act the language, "the court may, in its discretion, award or refuse the change," and when they caused to be inserted in the third section, "when it shall be clearly shown by the affidavits of not less than ten disinterested persons," that these were the only sections that should be left to the discretion of the court, and in the others, when the requirements therein mentioned were complied with, the granting of the change was imperative? We certainly think so. We think that, when the affidavit required by the statute is made and presented at the proper time, the only further jurisdiction the trial judge has is the making of the order for change of judge.

Now, if the statute read, "if it be shown to the court that the defendant cannot have a fair trial," then the defendant would be compelled to resort to the ordinary and usual way of proving the fact. Then it would seem to us there might be some show of reason for the position taken by the court in the Cox case. But the legislature, in its wisdom, did not see fit to stop at this point, but they go on, and clearly define just how and in what manner it shall be shown to the court,—just in what manner bias and prejudice of the judge shall be brought to the attention of the court, to-wit, "by the affidavit of the accused." Now, when the affidavit makes the statements required by the statute, in the exact and precise language of the statute, could it be stated in more direct, definite, and certain terms? And can it be said that the affidavit itself does not show what the statute requires? As we said before, it seems to us that, so far as

the affidavit itself is concerned, it shows on its face just what it states in clear, unmistakable terms.

In the case of *State v. Wolfe*, reported in 11 Ohio Cir. Ct. R. 591, the court says: "If the affidavit asking for the designation of a judge to try the case, on account of prejudice or bias of the judge, is filed with the clerk, the judge against whom the bias is charged has nothing further to do with the case. Where parties claim bias or prejudice, they need not set out facts upon which they base their claim. Whether a man is biased or not is a fact of itself, and it is not necessary to state something else to show that he has such bias. The fact of bias or prejudice is not issuable."

Now, when the legislature has spoken, and said "that, when it shall be shown to the court by the affidavit of the accused" that he cannot have a fair and impartial trial before the judge of the district court where the indictment is pending, a change of judge shall be had, and when the accused has fully and completely met and fulfilled this requirement, is it fair to presume that the legislature intended that this court, or any other court, should add to, detract from, change, vary, or require other and different conditions?

We desire to quote again in support of this position from the case of *State v. Kent*, 62 N. W. 635, being the North Dakota case before cited, where the court says: "On the very threshold of the trial, the counsel for the accused presented to the court an affidavit sworn to by the accused, stating that he could not have a fair and impartial trial by reason of the bias, prejudice, and partiality of Judge Winchester, who was the judge of the district in which the indictment was pending; and there-

upon the counsel for the accused moved, under the above section of the statute, that Judge Winchester call in another judge of the district court to preside at the trial. This motion was denied, and in so doing the learned trial judge erred. The error is fundamental, and because of it we are forced to reverse the conviction." After discussing the construction of the word "may," as used in the statute in reference to the duty or privilege of the trial judge to call in another judge when the statutory affidavit is made, citing many authorities, and coming to the conclusion that "may," as used in the statute, means "must," the opinion proceeds: "For whose benefit was it enacted? Obviously, for the sole benefit of those accused of crime, that they may be protected against even the unconscious leaning of a biased judge in favor of the prosecution. By expression of countenance, by tone of voice, by gestures, in a multitude of ways, a prejudiced judge may unwittingly suffer his feelings against the prisoner to so express themselves that the bias of the magistrate passes into the minds of the jury, thus depriving the accused of a fair trial before an impartial tribunal. When this prejudice exists, the law intends that another judge shall try the case."

We cannot do better than to quote further from the learned and philosophical discussion of the law of the case, and the unquestioned soundness of the construction placed on a like statute to our own by the Dakota court. The decision is thoroughly reasoned to inevitable conclusions, and will long stand as a monument of the wisdom, justice, and humanity of a great lawyer, who has so eloquently and tersely presented some of the fund-

amental principles and maxims of our governmental institutions. The statute under consideration, like ours, provides for the changing of the venue of a case on account of the prejudice of the people, also for the change of judge when biased or prejudiced, and in speaking of the first proposition the court says: "Having no interest in the question, the law very properly leaves it to him for decision. That he may decide it, the statute provides that affidavits may be used before him to prove or disprove this fact. The judge, in his discretion, may hear testimony on this subject." The court continues: "But, when we come to that branch of the statute relative to his own bias, nothing is said about his being satisfied of it, nor is there any provision made for the use, on an application for a change of judge, of any other affidavit than that of the accused, stating that 'by reason of the bias and prejudice of the judge, he cannot have an impartial trial.' Neither does the statute call for or permit the use of any other affidavit. These constructions make it clear that the judge is not to try the question of his own bias. The accused need not prove it to the satisfaction of the judge. He is not even allowed to introduce evidence on that point, aside from his own affidavit. Although he might have a score of witnesses to whom the judge had stated his prejudices, he [the prisoner] is powerless to use, on this application, the testimony of these witnesses or one of them. These observations lead us inevitably to the following conclusions in defining the rights of a defendant, under this statute in a criminal action: When the judge of a court in which the indictment is pending is biased, the defendant may insist that another judge be called to try

the case. The judge so attacked cannot try the question of his own bias. Unless, therefore, the right to a change of judge is absolute, on making the statutory affidavit, the protection of this salutary law is lost to the defendant, and its enactment was an idle deed. The nature of the power vested in the trial judge to call in another judge to try the case, the circumstances under which it is to be exercised, the fact that its exercise is beneficial to the one accused of crime, the principle that no one shall decide a question in which he is interested, and, finally, the very language of the statute itself, aside from the word 'may,'—these all unite to bring this law within the scope of that established rule which transmutes the permissive word 'may' into the imperative word 'must.'"

Could language be plainer, or reasoning clearer, in support of the plaintiff in error in this case, than that used by the Dakota court in construing and applying to the practicalities of a trial provisions of their statute, so similar to our own?

In the case of *Cass v. State*, 2 G. Greene, 353, under the statute of Iowa, which is similar to our own, the affidavit uses the language of the statute, and the court holds it to be the duty of the court to award a change of venue without further inquiry. The opinion further says: "The applicant, having complied with the requirements of the statute, is entitled to a change of venue as his right, and it is the duty of the court to grant it, without imposing any further requirements. * * The statute vests no discretionary power in the court, by the exercise of which a change of venue might be refused, when the applicant has complied with the stat-

ute in doing that which is required.  *  *  If to the acts plainly required by the statute to be performed by the court be added discretionary power, how and where is it to be limited?  If the judge may refuse to credit the affidavit of the parties and their witnesses in one case, he may do it in another.  *  *  But suppose the cause suggested for the change be a charge of prejudice against the party in the mind of the judge himself; will it be contended that this act of the legislature should be so construed that the judge, thus under its provisions charged with such prejudice, shall have the discretionary power, in a summary way, to question and inquire into the source of the belief of the affiants and their verifying witnesses, and decide upon the right claimed?  We think not.  *  *  That such a power might be so exercised as to endanger, if not destroy, the rights of the party, is obvious.  There is no power conferred upon the court by the statute to dispense with any of its requirements, nor to add to it, nor can any be exercised to increase the duties therein enjoined, and which might hinder him in obtaining his rights."

In the case at bar the affidavit was direct and positive, and the statement of bias and prejudice made in the precise language of the statute.  No greater showing was necessary, and, in fact, none could have been made under our statute.  It seems to us it would never do to hold that the trial court had the right to deny this application upon personal knowledge or information, which was not, and could not be, legally stated in the record.  By so doing would be to give to the court an absolute, unlimited discretion, which could not be reviewed by the appellate court, and a decision based upon evidence upon which error could not be assigned.

In the case of *McAllister v. Territory*, 1 Wash. T. 362, it is said: "And, if such interpretation is given to the statute, the trial court can, upon their personal knowledge, which need not be disclosed, as easily deny such applications when the particular facts whereon the conclusions of bias and prejudice are based are stated therein as where conclusions only are stated."

In the case of *Insurance Co. v. Tolman*, 80 Ill. 106, that very able jurist, Mr. Justice Walker, uses this language in pronouncing the opinion of the court: "It is insisted that the defense has no merits, but is purely technical. This may all be true, but still it is a right that is secured to the party by an express provision of the statute, and must be obeyed. All know that the courts have no power to repeal, modify, or even mitigate any requirement of the statute. If a reversal of this case works a hardship, appellees should have permitted the change of venue to have been made without opposition. They saw the petition and notice, and must have known that they were strictly in conformity with the statute, and entitled appellant to the change of venue. Counsel must have known that it was error to refuse the motion; hence they have contributed to the hardship they now complain of."

In the case of *Barrows v. People*, 11 Ill. 121, which was an indictment for larceny, the court says: "It is error to deny a change of venue when the prisoner has shown a clear right to it; and, in such a case, all subsequent proceedings of trial and conviction will be set aside, and the cause remanded, and the prisoner placed in *statu quo*."

In the case of *State v. Minski*, 7 Iowa, 338, the court says: "If real objections exist, this is no valid argument, for the party is entitled to a pure tribunal; and to reason

on the theory that the objections were not real is to suppose perjury in the affiant, upon which basis a decision cannot be reached. We do not think that the legislature ever intended to place any judge in the position that his decision would submit him to the humiliation that he was so prejudiced that he could not give his fellow man a fair trial in a criminal case."

In the state of Indiana the statute provides for change of venue for certain causes therein enumerated, and the statute then uses the following language: "A change of venue shall be granted upon the application of either party, made upon affidavit, showing one or more of the following causes." (Horner's Rev. Stat. sec. 412.)

Now, let us notice the similarity of the language of this statute and the one of Oklahoma now under consideration. The Indiana statute says, "affidavit showing;" the Oklahoma statute says, "show by affidavit." Will it be contended that there is any difference in meaning in the language of these two statutes? Are not the two forms of expression, in meaning, exactly the same—the same in force and effect? Now, we take it for granted that for all practical purposes, the language of the Indiana statute and of our own are identical. The same contention raised in this case has been raised under the statute of Indiana, and passed upon by the supreme court of that state, to wit, the contention that the affidavit must state reasons or causes for the belief that bias exists in the mind of the judge.

In the case of *Cory v. Silcox*, 5 Ind. 372, the court says: "Revised Statutes 1843, p. 949, sec. 1, makes provision for change of venue in civil suits, * * and among other specified causes is the cause of undue influence of

his adversary, or of the odium which attends the party or parties, or attaches to his legal cause of action or defense, or on the ground of local prejudice. The second section requires that the cause shall be distinctly set forth in the petition why said belief is entertained, and be supported by affidavit. The cause set forth in the petition in the record is on account of local prejudice, but the counsel for appellant contend that this is not sufficient, as it does not state the cause or causes why said prejudices are entertained. We think this position is requiring too much. To give the causes for such prejudice might require the history of the appellant's life, and the statement of matters wholly foreign to the case. It is enough for the party to believe that he cannot have a fair trial on account of the prejudice of those who are to try him. That is a cause within the second section, and to require the appellant to state why such prejudice exists would be requiring the cause of the cause."

In the case of *Witter v. Taylor*, 7 Ind. 110, the court says:    "Especially should the practice of admitting counter-affidavits be discouraged. It is a practice which, happily, has never found favor with the legislature or the courts of this state. Such a practice is certainly not provided for in this act. It would be contrary to all our past history to tolerate it. It was clearly very far from the intention of the legislature to institute a dangerous contest of affidavits. The basis on which to move for a change is the affidavit of the party. On that, and that alone, the court must act. If any one of the statutory requirements is complied with, the duty of the court is imperative. Something is said about the personal knowl

edge of the court, but the position is wholly unsound. Even if the judge in this instance knew every word of the affidavit to be false, that is nothing to the purpose. He is not to establish a vicious principle, even to accomplish a desirable end. His personal knowledge is like that of a juror, who has not been sworn to testify to his fellow jurors. The judge is not at liberty to predicate any judicial action upon it. The rights of parties do not depend upon his private knowledge. They are to be determined solely by what is judicially adduced in the due course of law. This office, in applications for change of venue, the affidavit alone can perform. If the party commits perjury in the affidavit, he subjects himself to the consequences. He takes his change at his peril."

In *Manly v. State*, 52 Ind. 215, the following is the opinion of the court in that case: "Upon arraignment, the defendant demanded a change of venue on account of the alleged bias and prejudice of the judge. The change was refused. The affidavit is sufficient. The learned judge states in his bill of exceptions, as reasons why the change of venue was refused, that the practice of making such motions had become so frequent that the court in the discharge of its duties, was seriously interrupted; that the court did not know the defendant, and, if the practice should continue, it would become difficult for the court to preserve its self-respect or to discharge its duty."

This same doctrine is declared to be the law in the case of *Krutz v. Griffith*, 68 Ind. 444. The defendant in the trial court filed his affidavit against the judge, alleging, in the language of the statute, that the judge was biased and prejudiced against him. The court overruled the

application for change of venue, assigning as a reason
therefor that the affidavit of the defendant did not go
further, and comply with the rules of the court. The
supreme court, in passing upon the sufficiency of the
affidavit and the power of the trial court to impose other
conditions than required by law, says: "The appellant's
affidavit in the case now before us complied strictly, and
almost literally, with the requirements of the clause of
the statute. The court has often decided that, where an
affidavit is filed for a change of judge on account of his
bias, prejudice, or interest, the court below has no dis-
cretion, but must grant the change.   *   *   We know of
no case, however, in this court, wherein a rule requiring
the applicant for a change of venue or of judge to em-
body in his affidavit for such change matters of fact, in-
formation, of belief, which are not specified in, nor re-
quired by, the terms of the statute, has been upheld, and
sustained. It seems to us that the rule of the court below,
above set out, in each one of the three particulars above
specified, is repugnant to the statute, and is therefore
void, where, as in this case, the application is for a change
of judge.   In such case, when a party has made and filed
his affidavit of the bias, prejudice, or interest of the
judge before whom the cause is pending, such party has
done all the statute requires him to do, and he is then
entitled of right, absolutely and unconditionally, to a
change of judge."   *   *

Another case construing the Indiana statute—which,
as we have before illustrated, is practically the same as
ours—is the case of *Krutz v. Howard*, 70 Ind. 174. De-
fendant filed his affidavit for change of venue, using the
precise language of the statute, showing the bias and

prejudice of the judge. The trial court sought to impose other conditions upon the defendant, and the court in its opinion uses the following language: "Under this statute, this court has frequently decided that, if the affidavit fulfills the requirements of the statute, the duty to grant the change of venue is imperative upon the court. * * The court cannot add to or take from the law one jot or one tittle. It must adjudicate and administer the law as it is. The court erred in overruling the motion for a change of venue."

Again, the supreme court of the state of Indiana in the case of *Rout v. Ninde*, 20 N. E. 704, passing upon the statute says: "It is only necessary for us to consider the question presented by the ruling of the court on motion for change of venue. The affidavit states that the appellant is the defendant in the cause, and that he cannot have a fair and impartial trial of said cause in the county of Adams, for the reason that the plaintiffs have an undue influence over the citizens of said county. The affidavit is in compliance with the statute authorizing a change of venue in civil actions, and it was error for the court to overrule the motion for a change of venue. The statute in force does not permit a counter showing to be made, and it makes it imperative on the court to grant a change of venue on proper affidavit being filed. Whether the statute operates to promote or retard the dispensing of justice, or whether its provisions are wise or unwise, is not for the court to determine. It is within the power of the legislature, and, having done so, it is imperative upon the court."

So, it seems to us that the course of procedure established by the judicial systems of the states and the federal

government is the law of the land for Oklahoma, and thus tested, the plaintiff in error was denied a fair and impartial trial. And by an almost unbroken line of judicial decisions it is held that when one accused of crime complies with the provisions of the statute mandatory in its terms, as in the statute in question in the case at bar, the judge is devested of all discretion, and loses all jurisdiction, except to make the order granting the change, and all his subsequent actions are absolutely void. It follows, then, as a matter of course, that the judge who would proceed with the trial after the making and filing of such an affidavit would do so without power or authority, and the trial would be a nullity. Therefore we think that not only measured by the weight of reliable authority, but by the principles of equity, justice, and sound law,—measured by the rule of reason,—the refusal of a change of judge in this case, by the trial court, was error which substantially affected the rights of the defendant, and deprived him of the protection which the law throws around every defendant, and took from him certain constitutional rights.

For these reasons the cause will be reversed, a change of judge ordered, and this cause remanded for further proceeding in the district court in accordance with this opinion. The case of *Cox v. U. S.* 5 Okla. 701, 50 Pac. 175, is hereby overruled.

McAtee, J., having presided in the court below, not sitting; all of the other Justices concurring.