## *Ex parte* J. F. HUDSON.

No. A-411.   Opinion Filed January 21, 1910.

(106 Pac. 540.)

1. **CONSTITUTIONAL LAW—Administration of Justice.** Section 15, Bunn's Const. Okla., providing that "right and justice shall be administered without sale, denial, delay or prejudice," is self-executing.

2. **JUDGES—Disqualification—Prejudice.** When the prejudice of the trial judge is made the ground of a motion for a change of judge, the Legislature may prescribe the method of determining this matter, but it is without power to abolish this ground of disqualification.

3. **JUDGES—Disqualification—Procedure.** A defendant seeking to disqualify a trial judge upon any ground must follow the procedure prescribed in section 5, Act. March 22, 1909 (Sess. Laws 1909, p. 169, c. 14, art. 1).

4. **STATUTES—Constitutional Law—Enacting Clause.** The act of March 22, 1909 (Sess Laws 1909, p. 167, c. 14, art. 1), prescribing the disqualifications of judges of courts of record, and providing for the election of a special judge **pro tempore** when the regular judge is disqualified, and repealing section 8, art. 1, c. 27, p. 285, Sess. Laws 1907-1908, is free from constitutional objections.

5. **STATUTES—Enactment—Style of Bill.** That portion of section 8, art. 5, of the official copy of the Constitution, which provides that "the style of all bills shall be 'Be it enacted by the people of the state of Oklahoma,'" applies only to bills adopted by the people under the initiative and referendum clause of the constitution.

Doyle, J., dissenting.

(Syllabus by the Court.)

Application of J. F. Hudson for writ of *habeas corpus*   Writ denied.

*Nance & Priest,* for petitioner.
*Fred S. Caldwell,* for the State.
No briefs reached the reporter.

FURMAN, PRESIDING JUDGE.   On the 3rd day of November, 1909, the defendant was convicted in the county court of

Adair county of the offense of selling whisky. On the 6th day of November, 1909, defendant applied to this court for a writ of *habeas corpus*, alleging that he was in the custody of the sheriff of Adair county by virtue of such conviction, and that the conviction was illegal for want of jurisdiction of the county court to try said cause upon the ground that before the beginning of the trial the defendant had · filed in said court his affidavit, alleging that the county judge who was presiding at said trial was so biased and prejudiced against the defendant that he could not obtain a fair and impartial trial before said county judge on account of such bias and prejudice, and that said county judge had disregarded said affidavit, and refused to allow defendant a change of judge, and that on this account the judgment of conviction was void and the restraint of the defendant illegal.

Section 15, Bunn's Const. Okla., is as follows:

"The courts of justice of the state shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation, and right and justice shall be administered without sale, denial, delay or prejudice."

The clear meaning of this provision is to prohibit the trial of any cause by a judge or juror who are prejudiced against either party to the cause. Prohibitive clauses of a constitution are always self-executing, and require no legislative provisions for their enforcement. In *Davis v. Burke,* 179 U. S. 403, 21 Sup. Ct. 210, 45 L. Ed. 251, the Supreme Court of the United States says:

"* * * Where a constitution asserts a certain right, or lays down a certain principle of law or procedure, it speaks for the entire people as their supreme law, and is full authority for all that is done in pursuance of its provision. In short, if complete in itself, it executes itself. * * *"

This question was considered and decided in *Rea v. State,* ante, p. 276, 105 Pac. 384. It is not necessary to repeat here what we said there. In *Lincoln v. Territory,* 8 Okla. 546, 58

Pac. 730, the Supreme Court of Oklahoma Territory, in construing the territorial statute upon this subject, said:

"It follows, then, as a matter of course, that the judge who would proceed with the trial after the making and filing of such an affidavit would do so without power or authority, and the trial would be a nullity."

If a trial would be a nullity on account of the violation of a statutory provision, it would certainly be a violation on account of the violation of a constitutional provision. Finding this provision in the Constitution, it is our plain duty to enforce it.

The Legislature of Oklahoma, on March 22, 1909, passed an act (Sess. Laws 1909, p. 167, c. 14, art. 1) providing for the disqualification of judges, the title of which is as follows:

"An act prescribing the disqualifications of judges of courts of record and providing for the selection or appointment of a special judge or judge *pro tempore* when the regular judge is disqualified and repealing section 8, article 1, chapter xxvii of the Session Laws of 1907-08."

The first section provides:

"No judge of any court of record shall sit in any cause or proceeding in which he may be interested, or in the result of which he may be interested or related to any party to said cause within the fourth degree of consanguinity or affinity, or in which he has been of counsel for either side, or in which he called in question the validity of any judgment of (or) proceeding in which he was of counsel or interested, or the validity of any instrument or paper prepared or signed by him as counsel or attorney, without the consent of the parties to said action entered of record: Provided, that the disqualifications herein imposed shall not exclude the disqualifications at common law." (Sess. Laws Okla. 1909, p. 167.

This act repeals all other acts or parts of acts in conflict with it. It also provides for the selection of a special judge when the regular judge is disqualified. This act does not mention the disqualification on account of prejudice of the judge. It is clear that the legislature did not intend to include in the grounds of disqualifications enumerated all of the grounds upon which a judge would be disqualified, because it is expressly stated that disqualifications at common law are not excluded.

Even if the Legislature wished to exclude constitutional disqualifications, it was without power to do so. The only serious question in this case is as to whether the act of March 22, 1909, is valid, because it omits what is known as the enacting clause.

In determining this question it is important to examine the original copy of the Constitution. Section 3, art. 5, of the official copy of the Constitution is as follows:

"Referendum petitions shall be filed with the Secretary of State not more than ninety days after the final adjournment of the session of the Legislature which passed the bill on which the referendum is demanded. The veto power of the Governor shall not extend to measures voted on by the people. All elections on measures referred to the people of the state shall be had at the next election held throughout the state, except when the Legislature or the Governor shall order a special election for the express purpose of making such reference. Any measure referred to the people by the referendum shall take effect and be in force when it shall have been approved by a majority of the votes cast thereon and not otherwise. The style of all bills shall be: 'Be it enacted by the people of the State of Oklahoma.' Petitions and orders for the initiative and for the referendum shall be filed with the Secretary of State and addressed to the Governor of the state, who shall submit the same to the people. The Legislature shall make suitable provisions for carrying into effect the provisions of this article."

It will be observed that among other things this section provides that "The style of all bills shall be 'Be it enacted by the people of the State of Oklahoma.'" Some courts hold that similar provisions in their Constitutions are not mandatory, but merely directory.

In *City of Cape Girardeau v. Riley et al.,* 52 Mo. 428, 14 Am. Rep. 427, the Supreme Court of Missouri said:

"The very question presented arose in a case in Maryland. The Constitution in that state is the same as ours in regard to the style of laws. A law was there passed omitting the required style, and it was decided that the constitutional provision was directory only, and not mandatory, and that the omission of the enacting clause did not render the act unconstitutional and void. *McPherson v. Leonard,* 29 Md. 377. So in Mississippi it is held that the provision is directory, and that it is not essential

that there should be a literal adherence to the formula of words prescribed by the Constitution, but that the acts need only to show the authority by which they are adopted, and that it was the intention of the Legislature that they should have the effect of laws. *Swann v. Buck,* 40 Miss. 268. After a diligent search I have failed to find any case holding that a law was unconstitutional or void on account of an omitted or imperfect enacting clause. The enacting clause is certainly not of the essence of the law. It furnishes no aid in its construction, and its provisions are as clear and intelligible without it as they are with it. It is not material in indicating by what authority the law was enacted, for, being passed in due form by both houses of the Legislature and properly approved by the Governor, with no allegation of suspicion attached to it, it comes before the courts bearing sufficient evidence that it is really and truly a law. To hold that a law supported by these sanctions was not valid because certain formal and immaterial words were omitted would be sacrificing substance to mere form, which I think the court is not justified in doing. Aside from these views, the act we are now considering does not pretend to be an original act. It is to reduce the law incorporating the plaintiff and the several acts amendatory thereto into one. The revision of a law does not have the effect of making the revised law entirely original, so as to be construed as though none of its provisions had effect but from the date of the revised law."

In *Swann v. Buck,* 40 Miss. 292, the Supreme Court of Mississippi said:

"The first question is whether the resolution is void for want of a sufficient enacting clause; and this involves another question, to wit, whether the Legislature has the constitutional power to pass a joint resolution at all, to have the force and effect of a law. By the fourth section of the third article of the Constitution the legislative power of the State is vested in the two branches which constitute the Legislature, and it is ordained that 'the style of their laws shall be: "Be it enacted by the Legislature of the State of Mississippi."' As the style of this resolution is 'Resolved by the Legislature of the State of Mississippi,' if a literal adherence to the formula precribed by the Constitution is required, it would follow that the resolution is wholly void. The question is one that does not seem to have received a judicial decision, so far as we have been able to discover; but in a work cited on the law and practice of legislative assemblies, by Mr. Cushing,

the opinion is expressed that this form of enactment must be strictly pursued, and that no equivalent language will be sufficient. In the absence of any authoritative adjudication we are not prepared to adopt this conclusion. The argument against requiring a literal compliance with any form of a statute would be very strong on the score of convenience; for the plainest expressions of the legislative will, and the most urgent in their character, would be constantly liable to be defeated by the slightest omission or departure from the established phraseology. No possible good could be achieved by such strictness, and the greatest evil might result from it. There are no exclusive words in the constitution negativing the use of any other language, and we think the intention will be best effected by holding the clause to be directory only."

There are other authorities to the contrary, but we are strongly impressed that reason and justice support the views which those quoted present. We will not rest our decision of this question upon this ground alone. The provision that "The style of all bills shall be 'Be it enacted by the people of the State of Oklahoma,' " both in its language and the position which it occupies in the Constitution, suggests the idea that its operation was intended to be confined to those bills which are initiated and enacted by the direct vote of the people, under the reserved powers of the people to enact laws independently of the will of the Senate and House of Represntatives. This provision is found under the title of "Initiative and Referendum," which contains all of the provisions of the Constitution relating to this class of legislation. Then follows the general title, "The Legislature." This is divided into subdivisions entitled, respectively, "The Senate," "The House of Representatives," "Legislative Apportionment," "Qualifications and Rights of Members," "Powers and Duties," "Limitations," "Miscellaneous Provisions." All of these provisions clearly show the most painstaking care in their arrangement, and in none of them is any rererence to the style of the bills to be passed by the Legislative Assembly. From a consideration of the subject-matter and the context, it is clear to us that the framers of the Constitution intended the words, "Be it enacted by the people of the state of Oklahoma", should be

used on all bills initiated and enacted by the people. Had the framers of the Constitution desired to fix the style of bills passed by the legislative body they would have done so, and provided that the style of such bills should be "Be it enacted by the Legislature of the state of Oklahoma." The Constitution makes a clear distinction between the bills enacted by the people themselves and those enacted by the Legislature, and we have no right to impose on legislative bills the conditions which were intended to apply only to the initiative and referendum. We, therefore, hold that the act of March 22, 1909, is valid and in full force and effect, notwithstanding the fact that the style prescribed under the head of initiative and referendum was omitted. By this act all other statutes with reference to the disqualification of judges were in express terms repealed. But this did not repeal the constitutional provisions guaranteeing to all classes of litigants the right to the administration of justice without prejudice. The Legislature may prescribe any fair and reasonable manner in which this prejudice may be determined. It may also prescribe the procedure to obtain the rights guaranteed under the Constitution. The right guaranteed is a fair trial before a judge or juror who is not prejudiced against the defendant. Ample provision is made in the act of March 22, 1909, for the selection of a special judge to try the case when the regular judge is disqualified.

Section 5 of the act prescribes the method of securing a change of judge in the event the trial judge refuses to certify to his disqualification and vacate the bench. That section is as follows:

"Any party to any cause pending in a court of record may in term time or in vacation file a written application with the clerk of the court, setting forth the grounds or facts upon which the claim is made that the judge is disqualified, and request him to so certify, after reasonable notice to the other side, same to be presented to such judge, and upon his failure so to do within three days before said cause is set for trial, application may be made to the proper tribunal for mandamus requiring him so to do."

Even though the provision of the Constitution prohibiting

the trial of a case by a prejudiced judge or juror is self-executing, the Legislature may enact laws prescribing the manner in which this provision may be enforced. In the case of *State ex rel. Reardon, Co. Atty., v. Scales, Mayor, et al.,* 21 Okla. 690, 97 Pac. 586, our Supreme Court, speaking through Chief Justice Williams, said:

"In the case of *Reeves v. Anderson et al.,* 13 Wash. 17, 42 Pac. 627, Mr. Justice Gordon, for the court, in discussing said section, says: 'A constitutional provision is said to be (not) self-executing "when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law." Cooley, Const. Lim. p. 121. "Perhaps even in such cases (where the power is self-executing) legislation may be desirable, by way of providing remedies for the protection of the rights secured, or of regulating the claim of the right so that its exact limit may be known and understood." *Id.,* 122. In our opinion, it was competent for the Legislature to supplement the constitutional provision by pointing out the manner in which the right conferred by the Constitution might be exercised, and by prescribing rules for the guidance of the city council in relation thereto.' "

While the Constitution prohibits the trial of a case before a prejudiced judge or juror, yet it is silent as to the manner in which the question of prejudice is to be decided. The machinery by which this should be determined, either as to judge or juror, is a proper subject of legislation. Manifestly a judge would have no more right to pass upon his bias or prejudice than a juror would have to decide as to his qualification, for it is a fundamental principle of law that no one should be permitted to be a judge when his own interests are involved. In case of juror, if a juror admits his disqualification, that settles it. If the juror denies disqualification, the trial judge passes upon that issue, and error of the trial court may be reserved for the determination of the appellate court. Under the statute now under consideration, if the trial judge admits his disqualification, he so certifies, and the election of a special judge takes place. If he does not regard himself as disqualified, he refuses or fails to so certify. Then the question can be presented to the appellate court by petition for

mandamus. This secures to the defendant his right to have the matter of the prejudice of the trial judge adjudicated, and if such prejudice is made to appear, his constitutional right to a trial before an unprejudiced judge will be protected. Upon the other hand society will also be protected from having trials delayed indefinitely by allegations of the prejudice of the trial court, when, as a matter of fact, no such prejudice exists, and the attempt to disqualify the judge is made solely for the purpose of delay and to defeat the enforcement of justice. This statute was not in force at the time of the trial of any of the cases previously decided by this court in which the question of the prejudice of the trial judge was passed upon. What was said in previous decisions has no application to cases tried since the act of March 22, 1909, went into effect. Holding as we do that this act is in effect, notwithstanding the lack of the enacting clause, the defendant must follow the procedure as prescribed in the act before he is entitled to the benefits prescribed. *Habeas corpus* is not a proper remedy where the court ignores the provisions of this act and refuses to certify to his disqualifications. On his failure to so certify the party complaining must proceed, under this section, by application to the proper tribunal for mandamus requiring him to so certify.

The writ of *habeas corpus* is denied and petitioner remanded to the custody of the sheriff of Adair county.

OWEN, JUDGE, concurs; DOYLE, JUDGE, dissents.

---

ON PETITION FOR REHEARING.

Denied March 28, 1910.

(107 Pac. 735.)

OWEN, JUDGE. The decision in this case was filed January 21, 1910. On February 17, 1910, petitioner filed his application for rehearing.

3 Cr.—26

There is no contention made that the original decision is erroneous as to the holding that the act of the Legislature (Sess. Laws 1909, p. 167) providing for the disqualification of judges is in effect notwithstanding the failure of the Legislature to attach the enacting clause. It is urged here that section 5 of this act is in conflict with the Constitution, because it prescribes an unreasonable remedy, which in effect deprives the defendant of his right to a trial without prejudice. As to whether the procedure prescribed is calculated, in some instances, to work a hardship on the party complaining, is not a matter to be determined by this court. That question was determined by the Legislature. The question for this court to determine is whether the section is in conflict with the Constitution, and whether the petitioner was bound to comply with its provision before he could pray for relief in this court. The language of the section is as follows:

"Sec. 5: Any party to any cause pending in a court of record may in term time or in vacation file a written application with the clerk of the court, setting forth the grounds or facts upon which the claim is made that the judge is disqualified, and request him to so certify, after reasonable notice to the other side, same to be presented to such judge, and upon his failure so to do within three days before said cause is set for trial, application may be made to the proper tribunal for mandamus requiring him so to do."

It was urged by counsel for the petitioner in the oral argument that in this state a plaintiff in a criminal case has the constitutional right to be tried before a judge without prejudice, and that when his affidavit is filed, alleging prejudice of the judge, that he is not bound to comply with the provisions of this act, and that his failure to do so is not a waiver of his constitutional right of a fair trial; that he cannot waive a constitutional right. With this contention we cannot agree. The Legislature had the right to regulate the method of obtaining a fair trial. *Boneparte v. U. S., ante,* p. 345, 106 Pac. 347. If the mere filing of the affidavit would *per se* disqualify a judge, and there was no method of determining this question before trial, a defendant whose conscience would permit him to make the affidavits to each succeed-

ing judge could never be brought to trial. It is no answer to say only one change of judge is permitted by statute. This statute cannot deprive a defendant of his right to a trial before a judge without prejudice, and under the constitutional guaranty of this right any judge elected or appointed to take the place of the regular judge may be disqualined, but the method prescribed by the Legislature must be followed. His right to be tried before a judge without prejudice is a personal right, and the doctrine is well settled that a personal right or privilege can always be waived. A party may waive any provisions, either of a Constitution or a statute, intended for his benefit. *Farmers' Nat. Bk. v. McCall* (Sup.) 106 Pac. 866; *Armfield v. Brown,* 70 N. C. 27; *Hahn v. Brinson,* 133 N. C. 7, 45 S. E. 359.

A well-considered case on this question is that of *Mehlin et al. v. Ice,* 56 Fed. 12, 5 C. C. A. 403. In that case the question arose in an action of forcible entry and detainer in the United States court in the Indian Territory. The matters in controversy had been determined in the district court of the Cherokee Nation. The defendant, Ice, was not a citizen of the Cherokee Nation, and in the United States court pleaded the lack of jurisdiction of the Cherokee court over his person. The United States Circuit Court in disposing of the question said:

"But it is said, conceding this to be so, and conceding that the District Court of the nation had jurisdiction of the subject-matter of the suit of *Mehlin v. Ice,* that it did not have and could not acquire jurisdiction over the person of Ice, because he was a white man, and a citizen of the United States, and that its proceedings are, for that reason, a nullity. There is a conclusive answer to this contention. Ice was notified to appear before the clerk, and show cause why he should not be put out of the possession of the premises. In response to this summons he entered a general appearance. He did not challenge the jurisdiction of the court over the subject-matter of the suit or over his person. He rested his right to the possession of the premises on a lease from Armstrong, and exhibited the lease, and asked that Armstrong be made a party defendant, which was done. Conceding that Ice, being a white man, was for that reason not subject to the jurisdiction of the courts of the nation, this was

a personal privilege, which he might and did waive. The eleventh amendment to the Constitution of the United States declares the, judicial power of the United States shall not extend to a suit. against a state, but it has always been held that the immunity from suit granted by this article is a personal privilege, which the state may waive at pleasure; and, when it does waive its privilege, and voluntarily submits to the jurisdiction of a United States court, it is concluded by the judgment. *Beers v. State of Arkansas,* 20 How. 527 [15 L. Ed. 991]; *Clark v. Barnard,* 108 U. S. 436-447, 2 Sup. Ct. 878 [27 L. Ed. 780]; *Cunningham v. Railroad Co.,* 109 U. S. 446-451, 3 Sup. Ct. 292, 609 [27 L. Ed. 992.] The denial of jurisdiction to the Cherokee courts over white men in the Cherokee country is not any broader, and is not founded on as high considerations of public policy, as the denial to the courts of the United States of jurisdiction over the states. A party may waive any provision either of a Constitution, treaty, or statute intended for his benefit. It is therefore competent for a white man to waive the treaty and statutory stipulations exempting him from the jurisdiction of the Cherokee courts; and when he enters a general appearance to an action pending in those courts, and pleads to the merits, and there is a trial upon such plea, he thereby waives the exemption, and submits himself to the jurisdiction of the court, and will not afterwards be heard to contest the validity of the proceedings and judgment of the Cherokee court upon the ground that it had no jurisdiction of his person. *Shutte v. Thompson,* 15 Wall. 151 [21 L. Ed. 123]; *Shields v. Thomas,* 18 How. 253 [15 L. Ed. 368]; *Jones v. Andrews,* 10 Wall. 327 [19 L. Ed. 935]; *Bank v. Okley,* 4 Wheat. 235 [4 L. Ed. 559]; *U. S. v. Rathbone,* 2 Paine, 578 [Fed. Cas. No. 16,121]; Hawes, Jur. §§ 9-11; *In re Cooper,* 93 N. Y. 507; *State v. Polson,* 29 Ia. 133; Brown, Jur. §§ 49, 50; *Bostwick v. Perkins,* 4 Ga. 50; *State v. Fooks,* 65 Iowa, 196, 452, 21 N. W. 561, 773; *Railway Co. v. McBride,* 141 U. S. 127, 11 Sup. Ct. 982 [35 L. Ed. 659]. The conclusion reached on this branch of the case renders it unnecessary to consider the other assignments of error."

It is urged that the pronoun "him" in the phrase, "and request him to so certify," refers to the clerk of the court, and that the pronouns "his" and "him" in the phrase, "and upon his failure so to do within three days before, said cause is set for

trial, application may be made to proper tribunal for mandamus requiring him so to do," refers to the clerk of the court. With this contention we cannot agree. To place this construction upon this section would give it a ridiculous and nonsensical meaning.

It is urged that these pronouns refer to the clerk for the reason that the first phrase of this section provides that the application must be filed with the clerk. All papers must be filed with the clerk; and the purpose of filing with the clerk is to make the paper a matter of record in order that it may be presented to the judge. The judge can only consider matters that have been made a part of the records of his court, and in our opinion the pronouns referred to refer to the judge, not the clerk. Otherwise what could be the necessity of presenting the application to the judge after reasonable notice to the other side? There is no notice provided for before the filing of the application with the clerk. The section provides that the application may be filed either in term time or in vacation. It seems to us unreasonable to say the purpose of the act is to provide a remedy by mandamus to require the clerk to certify the application to the judge. Suppose for instance this were true, and on the clerk's failure to so certify a mandamus issue to compel him to do so, and in compliance with the mandamus he delivers to the judge of the court of which he is clerk a certificate that the written application has been filed, and thereupon the court refuses to concede that he is disqualified and refuses to vacate the bench, then the complaining party has exhausted his remedy to no avail. The purpose of the act is to enable either party to a lawsuit to avoid a trial before a disqualified judge. The judge will not be permitted to pass on his own qualifications so as to preclude the complaining party from further objections; and the purpose of the requirement that the judge certify to his disqualifications is that there may be an election of a special judge to try the case. There must be some record of the disqualifications of the regular judge before a special judge could acquire juris diction of the case. Suppose the case be tried before a special judge and no record of the disqualifications of the regular judge,

then the appellate court would necessarily vacate the judgment on appeal, for the reason that the record failed to disclose the jurisdiction of the special judge. We can understand how in some cases the short time of three days, as fixed by this section in which to apply for a mandamus, might work a hardship; but these cases would be the exception rather than the rule. The three-day limitation is on the judge, and not on the complaining party. There is nothing to prevent the complaining party from filing his written application as soon as his case is in court, and if the judge arbitrarily withheld action on the matter until within three days before the time, and the party was then so far re- moved from the proper court to which he could apply for a man- damus, as to deprive him of the remedy, a motion for continu- ance would be in order until such time as would enable the party to present the matter to the proper court, and an arbitrary re- fusal to extend the time would no doubt be such an abuse of dis- cretion as to constitute grounds for reversal of a judgment against the complaining party.

This act of the Legislature does not include prejudice as a ground of disqualification, but the grounds enumerated are not an abridgment on those of the common law and our Constitution. Section 15 of Bunn's Edition of the Constitution provides that "right and justice shall be administered without sale, denial, de- lay or prejudice." The statute of Alabama on this subject is very similar to ours, and was construed in the case of *Ex parte Corn- well*, 144 Ala. 497, 39 South. 354. The defendant was charged with embezzling the funds of a savings bank and filed an affidavit alleging prejudice of the judge. The judge refused to certify that he was disqualified. The Supreme Court in passing on the ques- tion said:

"The petitioner objected to being tried on said indictments by the respondent as judge of the city court, on the ground of in- competency by reason of interest of said judge as a depositor in said bank, and requested the judge to certify his incompetency under the statute in order that a special judge might be selected to try petitioner on said indictments. This the respondent de- clined and refused to do. The present petition is for a per-

emptory writ of mandamus to compel the respondent to certify his incompetency. It is true that the respondent has no direct, pecuniary interest in the result of the prosecution by the state against the petitioner on the pending indictments. And, if the question of disqualification were left to be determined alone by the terms of the statute (section 2637 of the Code), under the facts in the present case, no disqualification could be said to exist. But, under the common law, there are other grounds than those mentioned in the statute, which go to the disqualification of the judge. In *Gill v. State*, 61 Ala. 172, it was said: 'According to the stern morality of the common law, a judge is required to be legally indifferent between the parties.' In Freeman on Judgment, § 145, it is said to be 'well settled by the common law that no judge ought to act where, from interest or any other cause, he is supposed to be partial to one of the suitors.' Any interest, the probable and natural tendency of which is to create a bias in the mind of the judge for or against a party to the suit, is sufficient to disqualify. The judge is human, and human nature, at best, is weak, and as far as it is possible a perfect equipoise should always be preserved in the administration of justice by the courts. Pecuniary interest in the result of the suit is not the only disqualifying interest. If such were true, there would exist no disqualification in the judge to try a defendant on a charge of arson in the burning of the house of the judge. And yet no one would for a moment question the existence of such an interest in the result of the trial, the probable and natural tendency of which would be to create a bias, that would affect the competency of the judge. In *Medlin v. Taylor*, 101 Ala. 239 [13 South. 310], in a contested election case, where the judge before whom the contest was instituted declined to sit, because his right to office by the same general election was being contested, but in a different forum, it was said by this court, speaking through the present Chief Justice, then justice: 'Judge Taylor not only had no pecuniary interest in the result of this contestation, but he had no interest whatever that could be affected by any possible termination of the issues involved'—citing authorities. It is the opinion of this court, however, that under the doctrine of the common law, aside from our constitutional and statutory provisions, he had such a personal interest in the questions involved in the contestation of Medlin, in the nature of things, such a bias in favor of one of the parties to the case, as disqualified him to hear and determine the same, and justified

his action in declining so to do. Here, as a result of the alleged embezzlement for which the petitioner was indicted and to be tried, the bank wherein the judge was a depositor failed, and, unable to pay its depositors, was put into the hands of a receiver for the purpose of winding up its business. By the alleged malconduct of the petitioner, the judge is made to suffer a loss of property—money deposited with the bank—to what extent does not appear, whether the total of his deposit, or only a part, but that this is immaterial. Under the facts, we think that the judge had such a personal interest in the subject-matter of the pending prosecutions, such as in the nature of things was calculated to produce in the mind a bias such as would impair, if not prevent, that equipoise which the stern morality of the common law demands in the administration of justice. Our conclusion, therefore, is that the judge was by reason of interest in the result of the suit disqualified to try the petitioner, and, unless he certifies his disqualification after being duly informed of our conclusion, the writ will issue as prayed for."

Section 5 of the act is declaratory of the common-law remedy to avoid trial before a prejudicial judge, and is not in conflict with the provision of the Constitution guaranteeing a trial without prejudice. Before the petitioner can invoke the aid of this court, he must comply with the requirements of this act or show cause for his failure to do so.

The petition for rehearing is denied.

FURMAN, PRESIDING JUDGE, concurs, DOYLE, JUDGE, dissents.