## STORTI *v.* MASSACHUSETTS.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF MASSACHUSETTS.

No. 378.    Argued November 19, 20, 1901. — Decided December 2, 1901.

The Federal Constitution neither grants nor forbids to the governor of a
State the right to stay the execution of a sentence of death.

The question whether, under a state statute a convicted party has a year in
which to file a motion for a new trial, and that therefore no sentence can
be executed on him until that time, is a question to be determined by the
courts of the State.

The treaty of February 26, 1871, between the United States and Italy only
requires equality of treatment, and that the same rights and privileges be
accorded to a citizen of Italy that are given to a citizen of the United
States under like circumstances, and there is nothing in the petition tend-
ing to show such lack of equality.

Section 761 of the Revised Statutes provides as to *habeas corpus* cases that
"the court or justice or judge shall proceed in a summary way to deter-
mine the facts of the case by hearing the testimony and arguments, and
thereupon to dispose of the party as law and justice require ;" and this
mandate is applicable to this court, whether exercising original or appel-
late jurisdiction.

On May 23, 1901, the appellant filed in the Circuit Court of
the United States for the District of Massachusetts his petition
in *habeas corpus.*

In that petition he stated that he was a citizen of Italy, and a
subject of its King; that he was detained by the respondent
under a warrant issued by the superior court of Suffolk County,
reciting a conviction of murder, and directing the warden to
inflict death by passing a current of electricity through him;
that the time fixed for the execution of the sentence was on
the week beginning April 7, 1901; that on April 9, 1901, the
governor, with the advice of the council, issued a document
purporting to respite the execution of sentence, the respite to
expire on Saturday May 11, 1901; that on May 10, 1901, he
presented a petition for a writ of *habeas corpus* to the said
Circuit Court, which petition was denied on May 11, 1901; that

from such denial he forthwith claimed and was allowed an appeal to the Supreme Court of the United States, and that such appeal was there pending and undetermined. The petition further stated that on May 10, he filed in the superior court for the county of Suffolk a motion for a new trial, in accordance with the provisions of the Massachusetts statutes, which motion was still pending and undetermined.

Upon these facts he asserted, first, that no law of Massachusetts provided for the punishment of a person sentenced to death, where the week appointed by the court for the execution had elapsed without execution and without any lawful action by the governor in the way of pardon, commutation or respite, and therefore that the detention by the warden was contrary to the provisions of the first section of the Fourteenth Amendment of the Federal Constitution; second, that for the same reason the detention was contrary to the third article of the treaty of February 26, 1871, between the United States of America and His Majesty the King of Italy, 17 Stat. 845, and contrary to section 2 of Article 6 of the Constitution of the United States; third, that by section 28 of chapter 214 of the Public Statutes of Massachusetts the court in which the trial of an indictment is had may at the term of the trial, or within one year thereafter, grant a new trial; that therefore execution could not lawfully be done upon him until the expiration of a year from the term at which he was convicted, to wit, in this case before July 1, 1901, and that the execution of the sentence before that date would deprive him of his life without due process of law, and would deny to him the equal protection of the laws, contrary to the first section of the Fourteenth Amendment; fourth, that for the same reason the execution of the sentence would be contrary to the third article of the treaty between the United States and Italy; fifth, that the execution of the sentence within the year would deprive him of his right under the statutes of Massachusetts to move for a new trial within the year, and of his right to be present at the decision of such motion, which right was guaranteed to him by article 23 of the treaty between the United States and Italy, which reads as follows: "The citizens of either party shall have free access

to the courts of justice, in order to maintain and defend their own rights, without any other conditions, restrictions or taxes than such as are imposed upon the natives. They shall, therefore, be free to employ, in defence of their rights, such advocates, solicitors, notaries, agents and factors as they may judge proper, in all their trials at law; and such citizens or agents shall have free opportunity to be present at the decisions and sentences of the tribunals in all cases which may concern them, and likewise at the taking of all examinations and evidences which may be exhibited in the said trials;" sixth, that the motion for a new trial which he had filed on May 10, not having been determined, execution could not lawfully be done upon him until the decision of that motion, notwithstanding which he had reason to apprehend that the respondent intended to immediately, upon the determination of the appeal to the Supreme Court of the United States, cause execution to be done upon him, which execution would deprive him of his rights under the Fourteenth Amendment and article 23 of the treaty; seventh, that the respondent derives his authority to hold the petitioner in custody solely by virtue of the provisions of chapter 326 of the Massachusetts Statutes of 1898, and that by them no authority was given to him to retain the custody of the petitioner after the expiration of the week appointed by the court for the execution of the sentence, except through the lawful action of the governor in granting a respite, that no lawful action had been taken by the governor in the matter, and that therefore the petitioner was detained of his liberty contrary to the Fourteenth Amendment: and, eighth, that for the same reason he was deprived of his liberty contrary to the Fourteenth Amendment and the third article of the treaty between the United States and Italy. The third article of the treaty between the United States and Italy, referred to in this petition, is as follows:.

"The citizens of each of the high contracting parties shall receive, in the states and territories of the other, the most constant protection and security for their persons and property, and shall enjoy in this respect the same rights and privileges

as are or shall be granted to the natives, on their submitting themselves to the conditions imposed upon the natives."

On the presentation of this petition to the Circuit Court, that court dismissed the same for want of jurisdiction, without prejudice to an application to the courts of the State. *In re Storti,* 109 Fed. Rep. 807. A certificate of this fact was signed by the Circuit Judge, and from the order dismissing the petition an appeal was taken to this court.

*Mr. G. Philip Wardner* and *Mr. William M. Stockbridge* for appellant.

*Mr. Hosea M. Knowlton* for appellee. *Mr. Arthur W. De-Goosh* was on his brief.

MR. JUSTICE BREWER delivered the opinion of the court.

The grounds set forth in this petition for a discharge by the Federal court of the petitioner from the custody of the warden are wholly without foundation, and the case is another of the numerous instances in which, as said by Mr. Chief Justice Fuller, in *Craemer* v. *Washington State,* 168 U. S. 124, 128:

"Applications for the writ have been made, and appeals taken from refusals to grant it, quite destitute of meritorious grounds, and operating only to delay the administration of justice."

It is an attempt to substitute a writ of *habeas corpus* for a writ of error, and to review the proceedings in a criminal case in the state court by such collateral attack rather than by direct proceedings in error—something which this court has repeatedly said ought seldom to be done. See, among other cases, *Baker* v. *Grice,* 169 U. S. 284; *Tinsley* v. *Anderson,* 171 U. S. 101, 104, and cases cited in the opinion; *Markuson* v. *Boucher,* 175 U. S. 184; *Minnesota* v. *Brundage,* 180 U. S. 499.

Many of the allegations in the petition are general and obscure, and it is not easy to determine therefrom in what particular the petitioner considers the proceedings against him to be

in conflict with the Federal Constitution or the treaty with Italy.

Some of the matters presented involve only the construction of state statutes and should be determined by the courts of the State, whose determination in respect thereto is binding upon this court. It must be borne in mind that under section 763 of Rev. Stat. the jurisdiction of the Federal court to issue a writ of *habeas corpus* is limited to "the case of any person alleged to be restrained of his liberty in violation of the Constitution, or of any law or treaty of the United States," and to cases arising under the laws of nations.

With these considerations in mind we pass to notice more particularly the matters set forth in the petition. It is stated that the petitioner was sentenced to be put to death at a given time; that he was not then put to death on account of a respite granted by the governor, and that such respite was unlawfully granted. Wherein the unlawfulness consisted is not stated, and whether it were lawful or not is a matter dependent on the laws of the State, and to be determined by its courts. The Federal Constitution neither grants nor forbids to the governor of a State the right to stay the execution of a sentence. So also it is said that under the Massachusetts statutes the party convicted has a year in which to file a motion for a new trial, and, therefore, no sentence can be executed on him until that time. Whether that be so or not is also a question depending on the statutes of the State, and to be determined by its courts. The State may see fit to postpone the execution of a capital sentence for a year, or provide that it shall be carried into effect more speedily, and what the State has provided in the matter is for its courts to decide.

It is averred that the proceedings in the Massachusetts courts are in conflict with the rights secured by the treaty between Italy and the United States, but the articles of the treaty referred to only require equality of treatment and that the same rights and privileges be accorded to a citizen of Italy that are given to a citizen of the United States under like circumstances, and there is nothing in the petition tending to show a lack of

such equality of treatment. The petition, therefore, is plainly without merit.

But the principal contention of counsel is that the petition was dismissed by the Circuit Court for want of jurisdiction and a certificate thereof given, and that under section 5 of the act of March 3, 1891, c. 517, 26 Stat. 826, the only question that we can consider is one of jurisdiction, and the following cases are referred to : *Horner* v. *United States,* 143 U. S. 570 ; *Chappell* v. *United States,* 160 U. S. 499 ; *Press Publishing Company* v. *Monroe,* 164 U. S. 105, and *Huntington* v. *Laidley,* 176 U. S. 668.

We do not question that rule as applied to ordinary suits and actions, but section 761, Rev. Stat., provides as to *habeas corpus* cases that "the court, or justice, or judge shall proceed in a summary way to determine the facts of the case by hearing the testimony and arguments, and thereupon to dispose of the party as law and justice require." That mandate is applicable to this court, whether it is exercising its original or appellate jurisdiction. Proceedings in *habeas corpus* are to be disposed of in a summary way. The interests of both the public and the petitioner require promptness ; that if he is unlawfully restrained of his liberty it may be given to him as speedily as possible ; that if not, all having anything to do with his restraint be advised thereof, and the mind of the public be put at rest, and also that if further action is to be taken in the matter it may be taken without delay. Especially is this true when the *habeas corpus* proceedings are had in the courts of a jurisdiction different from that in pursuance of whose mandate he is detained. This matter of promptness is not peculiar to these cases in Federal courts, but is the general rule which obtains wherever the common law is in force. It is one of those things which give to such proceedings their special value, and is enforced by statutory provisions, both state and Federal. The command of the section is "to dispose of the party as law and justice require." All the freedom of equity procedure is thus prescribed ; and substantial justice, promptly administered, is ever the rule in *habeas corpus.*

As the petition presented no case entitling the petitioner to

a discharge, as the grounds stated therein are absolutely frivo-
lous, and as the result reached in the Circuit Court was in ac-
cordance with law and justice,

> *The judgment is affirmed and it is further ordered that the*
> *mandate issue at once.*