## Ex parte ROGERS.

(District Court, D. Vermont. July 3, 1905.)

**1. CRIMINAL LAW—MURDER—SENTENCE—SOLITARY CONFINEMENT.**

V. S. §§ 4886, 2007, fix the punishment of murder in the first degree at death, and declare that at the time sentence of death is pronounced, if six months intervene before execution, the sentence shall be to hard labor in the State Prison until three months before execution, and to solitary confinement from the time of hard labor to the time of execution. Sections 1997 and 1998 authorize a new trial to be granted by two judges of the Supreme Court, and require, if they do so, that they shall allow a stay; and section 1999 declares that if the petition is refused the court shall appoint a time for execution; and Const. § 11, c. 2, provides that in cases of murder the Governor may grant a reprieve until after the next session of the Assembly, but no pardon. *Held*, that where petitioner was sentenced in December, 1903, for murder, to imprisonment at hard labor until three months before February 3, 1905, and to solitary confinement during that time, and then to be executed, but she was reprieved until June 23d, the keeping her in solitary confinement subsequent to February 3d constituted a separate severe punishment, to which she had never been sentenced, and was a deprivation of her right to be freed therefrom without due process of law.

**2. SAME—FEDERAL COURT—JURISDICTION.**

The federal court has no jurisdiction to interfere in any manner with state proceedings for the execution of a sentence against a convicted criminal, except to prevent any of the privileges or immunities of such person under the federal Constitution from being infringed.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, § 1383.]

Fred M. Butler, Thomas C. Moloney, and Edward B. Flinn, for petitioner.

Clarke C. Fitts, Atty. Gen., for the State.

WHEELER, District Judge. By section 4886 of the Vermont Statutes, the punishment of murder in the first degree is death. By section 2007, the court, at the time of sentencing to death, if it is six months before execution, is to sentence to hard labor in the State Prison until three months before execution, and to solitary confinement from the time of hard labor to the time of execution. The prisoner may bring a petition for a new trial to the Supreme Court, and, by sections 1997 and 1998, two judges may allow it to be filed, and, if they do so, they are to allow a stay; and, by section 1999, if, on hearing, the petition is refused, the court is to appoint a time for execution. In cases of treason or murder, by the Constitution (section 11, c. 2), the Governor may grant a reprieve, but not pardon, until after the next session of the Assembly. The petitioner here was sentenced by the Bennington county court in December, 1903, to hard labor until three months before February 3, 1905, and to solitary confinement during that three months, and then to be executed. Before that day she was reprieved by the Governor to June 2, 1905. A petition for a new trial was allowed to be filed by two judges, with a memorandum that the reprieve was a sufficient stay. This took her case into court again, where she was entitled to have the time of execution fixed by the court, if her petition for a new trial should be denied. The petition was re-

138 F.—61

fused by the court before June 2d, without appointing any time for the execution of the sentence, but leaving the time to which she was reprieved to stand as such. She was further reprieved from June 2d to June 23d, leaving the sentence of execution to be carried into effect then. She appears to have been kept in the same solitary confinement since February 3d that she was during the three months before February 3d until she was produced on this writ, without further sentence than that of Bennington county court, which expired on that day.

In Medley's Case, 134 U. S. 160, 10 Sup. Ct. 384, 33 L. Ed. 835, solitary confinement, with the sentence of death, appears to have been considered and held to be of itself a separate and severe punishment, in addition to being in custody until execution by hanging; and he appears to have been discharged from that confinement because the state of Colorado had, by statute going into effect after the commission of the crime, provided for the punishment of solitary confinement for a time before the execution. In this case the statutes require the keeper of the prison, having custody, to inflict solitary confinement until February 3d, as it was imposed by sentence of Bennington county court. The prisoner was left to suffer that punishment after February 3d by the reprieve of the Governor, and has been suffering it ever since. The Governor could only reprieve to a certain time, and the Supreme Court could only appoint a new time for execution. Neither could resentence, and she has been suffering the punishment of solitary confinement since February 3d, without sentence, and has been brought from such confinement on this writ. The fourteenth amendment to the Constitution of the United States provides that no state shall deprive any person of life, liberty, or property without due process of law. The petitioner apparently has been kept in solitary confinement, not imposed as a sentence by any court anywhere, but because the statute (section 2007) left that to be done, and by that law the state of Vermont required the prison officials to inflict that punishment in addition to that of hanging. It was not the Governor nor the Supreme Court of the state. So this appears to be a deprivation of liberty by the state, to the extent of this solitary confinement. She might prefer to have the time of execution fixed by the Supreme Court rather than by the Governor, and the judgment of death would not cut off any of her rights to such consideration. This situation led to the granting of this writ. The question now is whether it is sufficient to require holding the petitioner out of the custody of the State Prison officials and discharging her, because she has been unlawfully made to suffer that punishment until now, and, if remanded to the full custody of the prison officials, would have to suffer it till the time of execution, left to stand according to the reprieves, without being fixed by the court. Due process of law would seem to require that the person be present and have an opportunity to be heard at the time of the sentence, and that the time of execution after it be fixed by the authorized tribunal. No court anywhere would probably sentence to such severe punishment as solitary confinement without the pres-

ence of the prisoner. She had not been present at any sentence to that infliction, and therefore appears to have been deprived of the right to be free from it by the state without the due process of law guarantied by the federal Constitution. It follows that she should be discharged from that solitary confinement if it can and should now be done, and altogether, if leaving the time of the reprieve to stand as the time of execution without otherwise fixing it would not be fixing it, and therefore not due process of law. This court has no authority in any manner to interfere with the state proceedings, except to prevent any of the privileges or immunities of the person under the Constitution of the United States from being taken away or abridged. She has all the while had the right to apply to the state courts for relief from this solitary confinement and holding for execution, by habeas corpus proceedings like these. According to Storti v. Massachusetts, 183 U. S. 138, 22 Sup. Ct. 72, 46 L. Ed. 120, and other cases, as understood, these matters should to the extent of denial or failure be followed out in the state courts. A discharge from the solitary confinement on this writ now would be so near the time of execution under the expiration of the reprieve as to be practically inoperative, while it could have been applied for sooner in the state courts or here; and, on the whole, these seem to be so far matters of state procedure that the petitioner should be remanded. It appears that an application for a writ of error to the state Supreme Court has been before Mr. Justice Peckham, and his decision thereon has been referred to. If the questions here had been involved there before him, of course, they would not have been examined here, but it is understood that they were not. An application for a writ of error to review the proceedings of the Supreme Court on the petition for a new trial would not seem to involve any question as to the custody of the petitioner pending that petition or after a reprieve. The facts stated as to the petition for a new trial, the memorandum of the two judges thereon, its disposition, and the omission therefrom of any appointment thereon by the Supreme Court of a time of execution, are found from concessions made by the Attorney General of the state and counsel for the petitioner in her presence at the hearing; and the fact of solitary confinement since February 3d, the same as before, as stated, is inferred from the returns and like concessions of the prison officials.

Petitioner remanded.

After the petitioner was remanded an appeal to the Supreme Court of the United States was applied for and opposed by the state. In Storti v. Massachusetts an appeal was denied promptly by the judges of the Circuit Court to give "counsel an opportunity to seasonably reach the Supreme Court, or some justice thereof." An appeal appears to have been allowed afterwards by Mr. Justice Gray. In re Storti (C. C.) 109 Fed. 807. Here there was no sufficient time—only about one day before execution—in which to reach a justice of the Supreme Court, and no one else could allow an appeal if it should be denied here. What seems to be more of

a federal question than any involved or determined there arises here, and to deny an appeal, which is largely a matter of right, would arbitrarily cut off all chance to have it reviewed. The Governor appears to have granted a further reprieve till the 8th of December, after the sitting of the Supreme Court at which the appeal may be determined. After that the appeal was allowed.