### HAAS v. HENKEL, U. S. Marshal, et al.

(Circuit Court, S. D. New York. January 7, 1909.)

1. CRIMINAL LAW (§ 242*) — REMOVAL PROCEEDINGS — EVIDENCE — CERTIFICATION.

Testimony, with photographic exhibits, taken in proceedings to remove accused for trial from one federal district to another, if admissible in a subsequent proceeding for removal under indictments against different persons should be taken anew, and should not be certified from the proceeding in which they were introduced.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 242.*]

2. HABEAS CORPUS (§ 83*)—RETURN—TRAVERSE.

Where the return to a writ of habeas corpus is not traversed, issues of law only are raised.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 75; Dec. Dig. § 83.*]

3. HABEAS CORPUS (§ 83*)—RETURN—TRAVERSE.

Under Rev. St. § 760 (U. S. Comp. St. 1901, p. 594), providing that the return to a writ of habeas corpus and all suggestions made against it may be amended by leave of court, or justice, or judge, before or after the same is filed, so that the material facts may be ascertained,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the judge hearing a writ of habeas corpus may permit the writ to be traversed at the hearing, in order to raise issues of fact.

[Ed. Note.—For other cases, see Habeas Corpus. Cent. Dig. § 75; Dec. Dig. § 83.*]

4. INDICTMENT AND INFORMATION (§ 26*)—CAPTION—ERRONEOUS INDORSEMENT.
The caption of an indictment being no part of the bill, a mistake in the caption by substituting another person not included in the indictment for one of the defendants did not alter the fact that the indictment was against those charged.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 115; Dec. Dig. § 26.*]

5. CRIMINAL LAW (§ 242*)—REMOVAL OF ACCUSED FOR TRIAL—HEARING.
Where, on an application to remove accused to the District of Columbia for trial on indictments found against him in that District, he admitted his identity with the party charged in the indictments, the commissioner was then required to determine whether the indictments charged offenses against the United States, and, if so, whether they were triable in the District of Columbia.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 509, 510; Dec. Dig. § 242.*]

6. INDICTMENT AND INFORMATION (§ 15*)—PLACE OF CRIME—CONFLICTING INDICTMENTS.
Where separate indictments found in the Southern district of New York and in the District of Columbia charged the same offenses committed at the same time by the same person, the Washington indictments charging them to have been committed there, and the New York indictments charging them to have been committed in the Southern district of New York, such indictments were not mutually exclusive, so as to entitle accused to discharge on both.

[Ed. Note.—For other cases, see Indictment and Information, Dec. Dig. § 15.*]

7. CONSPIRACY (§ 33*)—"FRAUD"—OFFENSES.
"Fraud," within Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676), prohibiting conspiracy to defraud the United States, is not limited to fraud against property of the United States, but includes fraud against its rights of government.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 60; Dec. Dig. § 33.*

For other definitions, see Words and Phrases, vol. 3, pp. 2943–2954; vol. 8, p. 7666.]

8. CONSPIRACY (§ 33*)—"CONSPIRACY TO DEFRAUD"—AGRICULTURAL REPORTS—ADVANCE INFORMATION.
A conspiracy to obtain advance information of government agricultural reports and statistics before official publication did not constitute a "conspiracy to defraud" the United States, prohibited by Rev. St. § 5440 (U. S. Comp St. 1901, p. 3676).

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 60; Dec. Dig. § 33.*]

9. CONSPIRACY (§ 33*)—"CONSPIRACY TO DEFRAUD"—AGRICULTURAL REPORTS—ADVANCE INFORMATION.
A conspiracy to cause the publication of incorrect monthly agricultural reports concerning the cotton crop of the current year constituted a "conspiracy to defraud" the United States, prohibited by Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676).

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 60; Dec. Dig. § 33.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

10. BRIBERY (§ 1*)—GOVERNMENT EMPLOYÉS—DIVULGING SECRET INFORMATION—"LAWFUL DUTY."

Regulations of the Agricultural Department having forbidden the giving out of any statement whatever relating to the business of the department without the approval of the chief of the bureau, and secrecy having been imposed on all employés by the established usage and practice of the department, indictments charging bribery of an associate statistician of the Bureau of Statistics of the Department of Agriculture to divulge the contents of the current cotton crop report in advance of its official publication stated an offense under Rev. St. § 5451 (U. S. Comp. St. 1901, p. 3680), making it a crime to bribe any person acting for the United States in any official function to do or commit any act in violation of his lawful duty; the words "lawful duty" not being limited to duty imposed by law or statute, but include duty lawfully imposed in any manner.

[Ed. Note.—For other cases, see Bribery, Dec. Dig. § 1.*]

11. CRIMINAL LAW (§ 242*)—REMOVAL OF ACCUSED—PROCEEDINGS—SCOPE.

Where accused was charged with bribing an officer of the United States to violate his official duty, whether the person bribed was an officer, or was acting in an official capacity, or was violating a lawful duty, when he gave out information for which he was bribed, was for the determination of the trial court, and not for a United States commissioner on the hearing of an application to remove accused to the federal district in which the indictments were found for trial.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 242.*]

Nash Rockwood and Max D. Steuer, for petitioner.

Henry L. Stimson, U. S. Atty., for defendants.

De Lancey Nicoll, Howard S. Gans, and Thomas Staples Fuller, amici curiæ.

WARD, Circuit Judge. May 29, 1908, four indictments were presented to the Supreme Court of the District of Columbia, as follows: No. 26,087, against Moses Haas and Frederick A. Peckham, for conspiring at the District of Columbia, May 31, 1905, to commit an offense against the United States, viz.: Promising money to Edwin S. Holmes, Jr., associate statistician of the Bureau of Statistics of the Department of Agriculture, and an officer of, or a person acting on behalf of, the United States in an official function, to induce him, in violation of his lawful duty, established by the usage of the department, to divulge the contents of the cotton crop report for June, 1905, in advance of its official publication. No. 26,089 is a similar indictment against Moses Haas and Theodore H. Price. No. 26,086, against Moses Haas, Edwin S. Holmes, Jr., and Frederick A. Peckham for unlawfully conspiring, May 31, 1905, at the District of Columbia, to defraud the United States of its governmental function of publishing the cotton crop report for June, 1905—first and second counts, by using the information therein contained before its official publication for the purpose of speculating in cotton; fifth count, the same charge in the case of each monthly report to be thereafter published; third and seventh counts, by procuring Holmes to make an untrue report, stating that a greater number of acres of land had been planted than had in fact been planted.

On the same day exactly the same indictments were found in the United States Circuit Court for the Southern district of New York, charging the same offenses to have been there committed and by the same parties.

The government instituted proceedings under section 1014, Rev. St. U. S. (U. S. Comp. St. 1901, p. 716), to remove Haas for trial to the District of Columbia under the indictments presented there. The provisions of law involved are as follows:

"Sec. 5440. If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to a penalty of not less than one thousand dollars and not more than ten thousand dollars, and to imprisonment not more than two years." (U. S. Comp. St. 1901, p. 3676.)

"Sec. 5451. Every person who promises, offers, or gives, or causes or procures to be promised, offered or given, any money or other thing of value, or makes or tenders any contract, undertaking, obligation, gratuity, or security for the payment of money, or for the delivery or conveyance of anything of value, to any officer of the United States, or to any person acting for or on behalf of the United States in any official function, under or by authority of any department or office of the Government thereof, or to any officer or person acting for or on behalf of either house of Congress, or of any committee of either house, or both houses thereof, with intent to influence his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity, or in his place of trust or profit, or with intent to influence him to commit or aid in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States, or to induce him to do or omit to do any act in violation of his lawful duty, shall be punished as prescribed in the preceding section." (U. S. Comp. St. 1901, p. 3680.)

The commissioner, after a hearing, directed Haas to be committed to await the action of the district judge in respect to the removal. Haas thereupon petitioned for writs of habeas corpus and certiorari out of this court, so that the legality of his detention might be inquired into. The case has been elaborately argued before me on the petition and the returns to the writs and the proceedings before the commissioner.

There is a preliminary question to be considered, viz.: The application of the petitioner to have certain testimony, with photographic exhibits, which has been taken in another proceeding for the removal of Price for trial to the District of Columbia under indictment No. 26,088, certified into and made a part of the record in this proceeding. I think such testimony, if admissible, should be taken anew, and not certified in the way proposed. The United States attorney, however, waives this objection and opposes the application on the ground that the returns to the petition have not been traversed and only issues of law have been raised. I think this objection good. Still, as I could permit the petitioner to traverse the return to the writ of habeas corpus, if the testimony in question is material (sections 760, 761, Rev. St. U. S. [U. S. Comp. St. 1901, p. 594]; Storti v. Massachusetts, 183 U. S. 138, 140, 22 Sup. Ct. 72, 46 L. Ed. 120), I may add that I do not think it so. The testimony in question shows that though in-

dictment No. 26,088 was found a true bill against Price, Haas, and Holmes, and was so indorsed by the foreman of the grand jury, the caption on the back read: "U. S. against Theodore H. Price, Moses Haas, and Frederick A. Peckham." The presentment was filled up as against the same parties. The clerk of the court, in making his entries in the docket and in the court minutes, followed the caption on the back of the indictment. Discovering the discrepancy, he of his own motion struck out the name of Frederick A. Peckham in the docket and in the court minutes, and inserted the name Edwin S. Holmes, Jr., in accordance with the body of the bill. The caption is no part of the bill (Williams v. United States, 168 U. S. 382, 18 Sup. Ct. 92, 42 L. Ed. 509), and the mistake in making it does not alter the fact that the indictment is against Price, Haas, and Holmes, and not against Price, Haas, and Peckham. At all events, these objections concern principally the law and practice in force in the District of Columbia, and are fitter to be determined by the courts there than by the commissioner or by this court upon the question of probable cause for the petitioner's commitment. The application is accordingly denied.

Many objections have been made to the sufficiency of the indictments, which, though they might be good in the trial court on a motion to quash or in arrest of judgment after conviction, are of a kind which have been held to be fitter for disposition by the trial court than by the commissioner. Greene v. Henkel, 183 U. S. 249, 22 Sup. Ct. 218, 46 L. Ed. 177; In re Benson (C. C.) 130 Fed. 186; Benson v. Henkel, 198 U. S. 1, 25 Sup. Ct. 569, 49 L. Ed. 919. They will, therefore, not be further discussed.

But, as the petitioner admitted his identity with the party named in the indictments, there was left for consideration by the commissioner the questions whether the indictments did charge offenses against the United States, and, if they did, whether those offenses were triable in the District of Columbia. Tinsley v. Treat, 205 U. S. 20, 27 Sup. Ct. 430, 51 L. Ed. 689. If the commissioner ought to have decided either of these questions in the negative, he should have discharged the petitioner.

The petitioner contends that the commissioner was bound to take notice of the fact that the same offenses are charged to have been committed at the same time by the same persons in two different places, viz., the Washington indictments charging them to have been committed in Washington, and the New York indictments charging them to have been committed in the Southern district of New York, and because they could have been committed in one place only, it was impossible to say in which district he was triable, and therefore that he should have been discharged.

No doubt, if these inconsistent allegations were charged in a single indictment, it would be impossible to say whether, under that indictment, the petitioner was triable in the District of Columbia or in the Southern district of New York, and therefore should be discharged. United States v. Marx (D. C.) 122 Fed. 964. But the Washington indictments and the New York indictments are, considered separately, not open to this objection, and, even if they are, considered together,

mutually exclusive, it does not follow that the petitioner should be tried on neither, because there is nothing to show which set states the facts correctly.

The petitioner next objects that the indictments set out no offense against the United States. The Department of Agriculture was originally established by Act March 15, 1862, c. 72, 12 Stat. 387, and it was made an executive department, under the supervision of the Secretary of Agriculture, by Act Feb. 9, 1889, c. 122, § 1, 25 Stat. 659 (U. S. Comp. St. 1901, p. 285). Its purpose was to diffuse useful information connected with agriculture, to procure and distribute new and valuable seeds and plants, to acquire and preserve information concerning agriculture by the collection of statistics, and to make an annual report to the President and to Congress. The department of its own motion began to make monthly crop reports between June and December of every year. Doubtless the government established the department in the exercise of a governmental function, and the fraud contemplated by section 5440, Rev. St. U. S., may be against the rights of the government, as well as against its property. Curley v. United States, 130 Fed. 9, 64 C. C. A. 369. But no provision of law requires the statistics collected to be kept secret until the official publication of the monthly reports, and I cannot see that the United States was in any respect defrauded by the publication of these statistics to individuals before the official publication to the country at large. There is no ground for presuming that Congress intended to prevent individuals obtaining information in advance of its general publication. Such persons would, of course, have an advantage in trading in cotton with others who had not that information; but I do not see that the United States would be in any way defrauded, either of its property or its rights. We should not be induced, by our contempt for or indignation at such conduct as is set forth in the indictments, to turn it into a crime if it is not one. These were the views expressed by Holt, J., in United States v. Haas, unreported, in the case of a similar indictment found in 1905.

On the other hand, as the government evidently intended to supply the public with correct information, its whole purpose would not only be prevented, but actually reversed, if the department issued incorrect reports. A conspiracy to cause incorrect monthly reports to be p 'lished would defraud the United States, because it would change its department from an agency to enlighten the public into an agency to mislead it. It would be as if wreckers, in combination with persons connected with the location of channel buoys or with lighthouses, were to combine to move the buoys or extinguish the lights. Therefore the third and seventh counts of indictment No. 26,088, which charge the petitioner with being a party to such a conspiracy, in my opinion charge him with conspiracy to defraud the United States, which is made a crime by section 5440, Rev. St. U. S.

I think the indictments Nos. 26,087 and 26,089, for bribery, also charge offenses against the United States. Section 161, Rev. St. U. S. (U. S. Comp. St. 1901, p. 80), provides:

"The head of each department is authorized to prescribe regulations not inconsistent with law for the government of his department, the conduct of

its officers and clerks, the distribution and performance of its business and the custody, use and preservation of the records, papers and property appertaining to it."

Such regulations, as held in United States v. Macdaniel, 7 Pet. 14, 8 L. Ed. 587, need not be in the form of writing, but may consist of established usages and practices, which have become a kind of common law of the department. In this particular case regulations had been formally promulgated March 20, 1897, and December 19, 1901, by the secretary of the department, forbidding employés to give out any statement whatever relating to the business of the department without the approval of the chief of their bureau, and the indictments allege that secrecy was imposed upon all employés by the established usage and practice of the department.

Section 5451, Rev. St. U. S., makes it a crime to bribe any person acting for the United States in any official function to induce him to do or omit to do any act in violation of his lawful duty. The words "lawful duty" are not to be considered as duty imposed by law or statute, but as duty lawfully imposed in any way. Hough, J., in this district, so held in the Matter of Haas, 163 Fed. 908. The usage and the regulations in question were intended for the government of the department, were entirely consistent with law, and, as the charges in the indictment show, with the public welfare. They were therefore lawfully imposed on Holmes, and it was his duty to obey them. Although his failure to do so may not be a crime, because no statute has made it so, still section 5451 does make it a crime for any one, by the payment of money, etc., to induce him to violate this lawful duty. Whether he was an officer, or was acting in an official capacity, or was violating a lawful duty, when he gave correct statistics to Haas and his codefendants, or when he gave incorrect statistics to the public, are questions fitter for the decision of the trial court than of the commissioner. Benson v. Henkel, 198 U. S. 1, 25 Sup. Ct. 569, 49 L. Ed. 919.

The commissioner had probable cause for commitment, and the writ is therefore discharged, and the petitioner remanded.