## OWENS v. DANCY, Sheriff.*

Circuit Court of Appeals, Tenth Circuit. December 19, 1929.

No. 72.

H. B. Martin, of Tulsa, Okl., for appellant.

William L. Murphy, Asst. Atty. Gen. (Edwin Dabney, Atty. Gen., on the brief), for appellee.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

LEWIS, Circuit Judge. This is an appeal from an order discharging the writ of

*Rehearing denied February 17, 1930.

habeas corpus after final hearing, which had been sued out by appellant to obtain release from custody of the sheriff of Oklahoma County. Appellant was held by the sheriff under judgment of the supreme court of Oklahoma, which found him guilty of contempt of that court and adjudged that he be both fined and imprisoned therefor, the imprisonment to be in the county jail of said county.

The contemptuous conduct occurred in litigation begun in the State district courts and which by appeal was taken to the supreme court. Appellant was one of the litigants and the final decision was against him. After certain rulings had been made and the supreme court had delivered two opinions, the first for and the second against appellant, he with other litigants in the cause filed in the supreme court a motion for leave to file a petition for rehearing. The contents of this motion constituted the contemptuous conduct of which appellant was adjudged guilty. The record, however, discloses that the criticisms of the court therein contained were but a continuation and part of bitter denunciations by appellant of the court theretofore made in the public press and in printed pamphlets or circulars which he had distributed throughout the State. These attacks on the court and its members were carried on for several months. The Attorney General of the State filed in the supreme court the information for contempt. It contained two counts. The first was based on an article published in the Tulsa World over the appellant's signature. It cannot be gainsaid that this published article was a bitter diatribe and contemptuous. But that count was not disposed of on April 23, 1927, when appellant was found guilty on the second count, which set up the contents of the motion for leave to file in that court a petition for rehearing in appellant's case, which motion had been filed therein on January 3, 1927, and by appellant verified under oath. The contents of that motion, in so far as relevant, may be summarized thus:

It alleged that one of the opinions of the supreme court in appellant's case purported to have been written by one of the justices, naming him, whereas it was in fact written by one of the counsel for the plaintiffs and was handed down without any consideration having been given to the case by said justice and his associates who agreed with him; that the other opinion of said court purported to have been written by another named justice but was not in fact his opinion, that the same had been written at the direction of another of the justices of said court who was under the control and direction of another named opposing counsel in said cause and that the justice by whom said opinion purported to be written had no knowledge of what was contained in the case, gave no consideration to the briefs and wrote the opinion affirming the judgment of the trial court as he was directed to do by the other justice; that none of the other justices who were represented as concurring in said opinion gave consideration to the record and briefs in said causes and that the only basis for said opinion was a private letter written by said opposing counsel. It was further alleged "that to determine this cause and decide the same in the manner hereinbefore in this motion described, without judicial consideration and without the benefits of the briefs presented in said cause, and without the knowledge on the part of the justices participating in said decision of what was in the case-made upon which said causes both proceeded, was a legal fraud against the rights of these movants, * * * and movants say that if given the process of this court, so that the witnesses having knowledge of the facts hereinbefore set out and plead may be examined in this Honorable Court touching said facts, the same will be established by proof." The motion shows that the first opinion reversed a judgment against appellant for $93,000 and the second opinion was an affirmance of said judgment.

Having been cited to appear and answer the charges in the information for contempt appellant came into court with his counsel. He challenged the jurisdiction of the court, and filed an application requesting that eight of the nine justices disqualify themselves to sit in the contempt proceeding on the ground that they were biased, prejudiced and interested in the cause and that it would be necessary on the trial to use some of said justices as witnesses. This application and the motion and demurrer attacking jurisdiction were overruled. Appellant then plead not guilty and demanded a jury trial, which was denied. Appellant's counsel was then asked if he had anything further to present and announced: "The respondent will not introduce evidence, because of the fact that several of the judges now sitting are material witnesses in this cause." The court then asked whether respondent had anything further to say why he should not be adjudged in contempt of court on the second count, and his counsel announced that all had been said for respondent that he desired to say. The court then found that the statements contained in said motion for leave to file petition for rehearing, as charged in the second count of the informa-

884

tion, were contemptuous and entered its judgment imposing fine and imprisonment. Appellant was then committed to the custody of the defendant sheriff, and he soon thereafter sued out the writ of habeas corpus in the Oklahoma criminal court of appeals. That court held that appellant had been committed and was in custody without due process and ordered his discharge. The State supreme court thereupon issued its writ commanding the sheriff to disregard the order of the criminal court of appeals. Thereupon appellant sued out the writ here under consideration.

In order that a Federal Judge or Court might issue the writ it was necessary for appellant in his petition to bring his case within the requirements of section 753 R. S. U. S. (Tit. 28, Sec. 453, USCA): "The writ of habeas corpus shall in no case extend to a prisoner in jail unless where he  *  *  *  is in custody in violation of the constitution or of a law or treaty of the United States." Storti v. Massachusetts, 183 U. S. 138, 22 S. Ct. 72, 46 L. Ed. 120. It was incumbent upon him in pleading and proof to make out a case clearly showing violation of some Federal right; and so for that purpose he pleads that the judgment against him was and is void, because (1) the justices who sat were disqualified and on account of disqualification their action was a nullity; and because (2) he was lawfully released from custody by the Oklahoma criminal court of appeals—and hence, he is restrained without due process in violation of the guaranties of the Fourteenth Amendment

Another settled rule in proceedings of this kind is that the writ of habeas corpus cannot be used to investigate and consider questions of error that might be raised touching procedure or on the merits. In no sense and on no point can we act as a court of review of the action of the State courts, further than to inquire into their jurisdiction. On the last point urged it is claimed, at least until this case arose, the criminal court of appeals had frequently exercised original jurisdiction in habeas corpus proceedings and its right to do so was fully recognized and approved by the supreme court. The cases relied on no doubt support the contention, but none of them presented the situation we have here, and it was clearly held by the supreme court in this controversy between it and the criminal court of appeals, State ex rel. v. Davenport, 125 Okl. 1, 256 P. 340, that said court of appeals was without jurisdiction in habeas corpus except in aid of its own appellate jurisdiction, that the State constitution did not give said court of appeals any power over final judgments of the supreme court, and that the supreme court had the constitutional power to prohibit said court of appeals from releasing one ordered imprisoned for contempt by the supreme court. We are bound by this construction given by the supreme court of the State to its constitution and statutes. It is the last ruling, in fact the only one on the specific question now in hand. But if it be granted that the rule was the other way until this case arose and that the criminal court of appeals had the power contended for by appellant, so recognized by the supreme court, still a change in the rule by the highest court of the State in that respect does not create a Federal question. Patterson v. Colorado, 205 U. S. 454, 27 S. Ct. 556, 51 L. Ed. 879, 10 Ann. Cas. 689; Gasquet v. Lapeyre, 242 U. S. 367, 37 S. Ct. 165, 166, 61 L. Ed. 367. In the last case it is said:

"And, as our decisions show, there is nothing in the clauses of the Fourteenth Amendment guaranteeing due process and equal protection which converts an issue respecting the jurisdiction of a state court under the Constitution and statutes of the state into anything other than a question of state law, the decision of which by the state court of last resort is binding upon this court."

The second ground for the contention that appellant was denied a Federal right because of the claimed disqualification of the justices is, we think, equally untenable. At common law the judicial act of a disqualified judge does not affect his jurisdiction. Such an act is not void but voidable only, and is only reviewable on error or appeal but not subject to collateral attack. 33 C. J. p. 1022. In the Davenport Case, supra, the Oklahoma supreme court held that there was nothing in the constitution or statutes of the state which prohibits the justices from acting on the question as to whether or not they were disqualified and that said supreme court, and also the criminal court of appeals, had theretofore held that a litigant's right to preclude from trial of his case a disqualified judge is only a personal privilege and that the judgment of a court presided over by a disqualified judge is not void. We are cited to cases sustaining the rule stated, in both the supreme court and the court of appeals. Holloway v. Hall, 79 Okl. 163, 192 P. 219; Ex parte Hudson, 3 Okl. Cr. 393, 106 P. 540, 107 P. 735; and cases from other States. The subject is discussed at length in Tumey v. Ohio, 273 U. S. 510, 47 S. Ct. 437, 71 L. Ed. 749, 50 A. L. R. 1243. A distinction seems to be taken between a direct interest in the

result of the litigation and remoteness of interest, the latter not being a disqualification. In that case the attack was direct and the inquiry was not restricted to one of jurisdiction only. That case was reviewed on error. The personal interest of two of the justices relied on as disqualification, is stated to be that one of them had sued appellant in libel for a large amount, and that another contemplated doing so and later did bring a like suit. But we are unable to see how the institution of those suits could constitute a personal interest in the determination of whether appellant was guilty of contempt or that the judgment in contempt would be an admissible fact in behalf of the plaintiff in the libel action. The State statute on the subject is section 2633, Comp. Okl. St. 1921. It reads:

"Any party to any cause pending in a court of record may in term time or in vacation file a written application with the clerk of the court, setting forth the grounds or facts upon which the claim is made that the judge is disqualified, and request said judge so to certify, after reasonable notice to the other side, same to be presented to such judge, and upon his failure so to do within three days before said cause is set for trial, application may be made to the proper tribunal for mandamus requiring him so to do."

The application requesting eight of the justices to certify their disqualification filed by appellant in the contempt proceedings did not state facts on which the claimed disqualification was based other than these, that in the prosecution of appellant's counsel for contempt in presenting said motion for leave to file petition for rehearing, six of said eight justices disqualified themselves and the other two were ordered by the special court which was appointed to sit in that contempt proceeding to disqualify themselves and that one of the two had at that time an action against appellant pending in the district court of Oklahoma County for damages on account of the things set forth in the information for contempt. No other facts were stated to support the general charge therein that all of the eight were biased and prejudiced against the respondent, appellant here, and interested in the determination of his cause. On overruling this application no request was made by appellant for time to apply for mandamus. He also declined to introduce any evidence in support of his claim of disqualifications, for the reason, stated at the time, "that several of the judges now sitting are material witnesses in this cause." Both the criminal court of appeals and the supreme court of the State have held that there is no basis for complaint on failure of a judge to disqualify unless the litigant has fully complied with the statute. Kelly v. Ferguson, 5 Okl. Cr. 316, 114 P. 631; Hausam v. Parker, 31 Okl. 399, 121 P. 1063; State ex rel. Attorney General v. Owens, 125 Okl. 66, 256 P. 704, 52 A. L. R. 1270; State ex rel. Attorney General v. Martin, 125 Okl. 24, 256 P. 681. If the statutory procedure is not fully complied with there is no basis for complaint because of failure to disqualify, even on appeal; and so it is argued, much less has appellant the right to complain in this collateral attack. The supreme court held in the Davenport Case that these facts constituted a waiver of the personal privilege to get rid of the justices. This again presents a question of local procedure, not of jurisdiction, nor raising a Federal question. Moreover, it is insisted here by the Attorney General for the State that appellant's conduct shows a deliberate purpose subservient of his personal interest to get rid of the justices in his pending litigation in which they had affirmed a judgment against him for a large amount. The record tends strongly to support the contention, and, as said in Cooke v. United States, 267 U. S. 517, 45 S. Ct. 390, 396, 69 L. Ed. 767, this purpose ought not to succeed. "Of course, where acts of contempt are palpably aggravated by a personal attack upon the judge, in order to drive the judge out of the case for ulterior reasons, the scheme should not be permitted to succeed." But after all, that was not a contempt in the presence of the court, as is the case here. And, as further said in the Cooke Case, of contempt committed in the presence of the court, "There is no need of evidence or assistance of counsel before punishment, because the court has seen the offense. Such summary vindication of the court's dignity and authority is necessary. It has always been so in the courts of the common law, and the punishment imposed is due process of law." Appellant caused the contemptuous pleading, verified by him under oath "that the statements, allegations and averments therein made and contained are true," to be brought into court and placed among the files in the case to which he was a party for the court's inspection and action thereon. This clearly constituted contemptuous conduct in the presence of the court. As to the facts, the motion filed by appellant was the whole case; and they presented a question of law. We cannot say they did not constitute contempt, nor are we here called on to pass upon that issue.

We think the judgment of the court was

not void and that there is no ground for the contention that appellant's conviction and punishment were in violation of any Federal right. The order discharging the writ is

Affirmed.